UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN JOEL HOPSON,<br><br>    Plaintiff,<br><br>v.<br><br>KINGS COUNTY JAIL, *et al.*,<br><br>    Defendants. | 1:23-cv-01555-EPG (PC)<br><br>ORDER DIRECTING CLERK<br>TO ASSIGN DISTRICT JUDGE<br><br>AND<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

    Plaintiff Ryan Joel Hopson is confined in Kings County Jail (KCJ) and proceeds *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on November 3, 2023. (ECF No. 1). Plaintiff alleged several issues at Kings County Jail that he believes violated his constitutional rights.

    On May 7, 2024, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 10). The Court provided Plaintiff with applicable legal standards, explained why the complaint failed to state any cognizable claims, and gave Plaintiff thirty days to either file a first amended complaint or notify the Court in writing that he wanted

1

1  to stand on his complaint. (*Id.* at 2, 19). The Court also denied Plaintiff's motion for
2  appointment of counsel and other miscellaneous relief. (*Id.* at 16–17).
3        After receiving the Court's screening order, Plaintiff filed a notice on June 12, 2024 that
4  he wanted to stand on his complaint. (ECF No. 12). For the reasons set forth below, the Court
5  directs the clerk to assign a district judge and recommends that this action be dismissed for
6  failure to state a claim. Plaintiff has thirty days from the date of service of these findings and
7  recommendations to file his objections.
8  **I.   SCREENING REQUIREMENT**
9        The Court is required to screen complaints brought by prisoners seeking relief against a
10 governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).
11 The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are
12 legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or
13 that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.
14 § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may
15 also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any
16 portion thereof, that may have been paid, the court shall dismiss the case at any time if the court
17 determines that the action or appeal fails to state a claim upon which relief may be granted." 28
18 U.S.C. § 1915(e)(2)(B)(ii).
19 **II.   SUMMARY OF PLAINTIFF'S COMPLAINT**
20       Plaintiff's complaint (ECF No. 1) is divided into four distinct parts, each with different
21 defendants concerning different events at Kings County Jail.
22       The first part names A. Lopez and DT131 as defendants and alleges that on May 10,
23 2023, Plaintiff asked for a plunger around 8:00 am. The lady on the button told him to ask the
24 Sheriff. She was clearly not concerned about fecal matter or urine spilling onto Plaintiff's floor
25 or out of the cell contaminating the tier/pod floor. She never asked how bad it was. Plaintiff
26 asked Mr. A. Lopez, but he never brought a plunger. Around 10:57 a.m., Plaintiff asked again
27 and Lopez responded "I'll get it." Plaintiff had to clear the floor with his bare hands and a
28 towel to keep the fecal matter and urine contained. Plaintiff was forced to urinate in the sink

and hold in other excretions for hours. Around 11:02, Plaintiff asked for the lady corresponding with him through the button to give her name or some type of identification. She responded with DT131. Plaintiff asked for the plunger again. Her response was "I will let them know." At 11:09 am, A. Lopez said he was working on it. At 11:15 am, a sheriff brought Plaintiff the plunger and left it inside A5 pod by the door. At 11:56 am, Plaintiff spoke with Lopez and he said he'd have her "pop" him out. He "said he'll do it right now." At 12:00 am, Plaintiff asked how long it will take to get the plunger from the door to his cell. Her reply was "I don't know." At 12:40 pm, Plaintiff asked Lopez for the plunger and he replied "she never popped you out." For about 5 hours Plaintiff was forced to hold in excretions. Plaintiff was treated as less than human with biased malicious intentions from both levels of staff.

The second part of the complaint names Defendant Calderon, a Sheriff corporal, and Panduro, ISU classification sheriff, and V. Rodriguez, Sergeant Sheriff, all at Kings County Jail as defendants. Plaintiff alleges that, around May 10, 2023, POD A5 was put on modified program due to a physical altercation, which turned into a verbal altercation with Mr. Panduro that Plaintiff had absolutely nothing to do with. Unfortunately, Plaintiff had to endure and suffer consequences for other inmates' actions. It is Plaintiff's understanding that inmates were supposed to be released one or two cells at a time for only 30 minutes. Plaintiff was in cell 78 and for the majority of the time cell 79 was empty. For over a week, Plaintiff had the only cell that got released last on multiple occasions or for the majority of the lockdown. By the time Plaintiff was released for program, it would be 11:30 or 12:00, even as late as 1:00 in the morning. Program was shut down by then. The TV and phones were off. Many times, Plaintiff could not use the phone or enjoy his 30 minutes. On March 15, 2023, Plaintiff's program time was reduced to just 20 minutes. At this point, Plaintiff would only come out to take a shower and dump his trash. Plaintiff raised the issue with Mr. Corporal Calderon. Calderon said the program was randomized by the computer, but admitted Plaintiff was last for the majority of the time. Due to the lack of authorized staff, program was mishandled. Plaintiff was deliberately treated differently with a lack of concern until Plaintiff mentioned being subject to overly restrictive conditions and was purposefully ignored.

The third part names as defendants M. Cantu, RN/LVN at Well Path medical, Sandy, LVN/RN at Kings County Jail, and Well Path Medical at Kings County Jail. Plaintiff alleges that on April 22, 2023 through April 28, 2023, Plaintiff saw a medical provider with her name tag flipped around. Plaintiff took x-rays on April 25 due to severe pain for possible damaged ribs. The medical provider told Plaintiff nothing was wrong with him, and told him to stretch his arms over his head and that his oxygen levels were ok. Plaintiff could not breathe at times, lay on his side, or sleep due to excruciating pain. Plaintiff told the Sheriffs' medical staff on multiple occasions that something was wrong. After complaining and putting in multiple sick call slips for his x-ray results, which should have only taken 5–6 days to receive, as well as trying to receive some type of medication or comfort from a medical standpoint on what to do, Plaintiff was constantly told that nothing was wrong and Plaintiff would be ok from April 22, 2023 until 6 weeks later. Plaintiff was not given any medication for his pain. After 6 weeks of saying he was in pain, medical staff finally started to give Plaintiff ibuprofen, then later motrin. After about 8–10 weeks, a medical provider finally told him it couldn't have been bruised. Well Path Staff Miss Sandy prevented Plaintiff's medical care, deprived him of basic human needs that affected his health, and had poor professional standards.

Plaintiff's fourth part names Defendant Blanco, deputy sheriff at Kings County Jail as defendant. Plaintiff alleges that around the second or third week of June, Deputy Blanco was assisting with a medical pass around 8:00 am. Due to extreme pain in Plaintiff's ribs, Plaintiff had previously requested to see a RN/Staff that was more familiar with Plaintiff's rib situation. At 5 am that morning, Plaintiff had requested to be seen by medical to discuss the type of pills and type of pain Plaintiff was feeling. During pill call, Deputy Blanco came to Plaintiff's cell with medical staff. Plaintiff doesn't know the staff's name because her name tag was flipped around. Blanco opened Plaintiff's tray so that the staff person asked Plaintiff's name. Plaintiff responded "what type of pills are you giving me?" She asked Plaintiff's name again. Plaintiff responded that he was allergic to penicillin. Before he could tell his name and proceed with handling of the medical issue, Mr. Blanco out of pure frustration, irritation and anger slammed Plaintiff's tray slot with his aggressive body language and said "you're done, you're not getting

1  anything for being disrespectful. I don't have time for this." He came back on his walk a short
2  time later. Plaintiff asked "why did you treat me like this?" He responded "you are
3  disrespectful." Plaintiff said he had been explaining about his allergies. Blanco cut Plaintiff off
4  and asked why he should get medical now that they are busy. Plaintiff responded "so now I
5  have to suffer all the way until around 8–9 pm 3rd day room med pass?" He replied "you should
6  not have disrespected me or staff." Plaintiff was treated with biased and malicious intentions in
7  order to keep Plaintiff in pain.

In his request for relief, Plaintiff asks for money damages in the sum of 795,877, injunction, and punitive damages. (ECF No. 1 at 13).[1]

## III. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing

---

[1] With his complaint, Plaintiff also included a request for appointment of counsel and other miscellaneous relief (ECF No. 1 at 12), which the Court denied in its screening order (ECF No. 12 at 19).

1  "under color of state law"). A person deprives another of a constitutional right, "within the
2  meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or
3  omits to perform an act which he is legally required to do that causes the deprivation of which
4  complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th
5  Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal
6  connection may be established when an official sets in motion a 'series of acts by others which
7  the actor knows or reasonably should know would cause others to inflict' constitutional harms."
8  *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of
9  causation "closely resembles the standard 'foreseeability' formulation of proximate cause."
10 *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City*
11 *of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

12 Additionally, a plaintiff must demonstrate that each named defendant personally
13 participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there
14 must be an actual connection or link between the actions of the defendants and the deprivation
15 alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,
16 691, 695 (1978).

17 **IV.    ANALYSIS OF PLAINTIFF'S CLAIMS**
18 **A.    Unrelated Claims and Defendants**

19 As an initial matter, Plaintiff's complaint is subject to dismissal because it raises
20 numerous unrelated claims against different defendants, which cannot be combined into one
21 lawsuit.

22 Under the Federal Rules of Civil Procedure, Plaintiff may not proceed on unrelated
23 claims against different defendants in a single action. Plaintiff may sue one defendant for
24 multiple claims. Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or
25 third-party claim may join, as independent or alternative claims, as many claims as it has
26 against an opposing party."). And Plaintiff may sue multiple defendants in one action "arising
27 out of the same transaction, occurrence, or series of transactions or occurrences" and "any
28 question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P.

6

20(a)(2). But Plaintiff may not assert unrelated claims against different defendants in one lawsuit. "Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." *K'napp v. California Dept. of Corrections,* 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 F. App'x 791 (9th Cir. 2015) (internal quotations and citations omitted).

Here, Plaintiff's complaint names eleven different defendants concerning different events on different dates spanning several months and involving such unrelated issues as access to toilet and toilet plunger, program time and phone usage, and inadequate medical care. Therefore, Plaintiff's complaint is subject to dismissal on this basis alone.

**B.     Linkage Requirement and Supervisory Liability.**

Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978). Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."

*Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

Here, Plaintiff fails to link several named defendants to his allegations. With respect to Claim 2, he appears to allege that defendants Panduro, Rodriguez, and Calderon were involved in deprivations of his constitutional rights based on Plaintiff's limited access to phone and "program time." (ECF No. 1 at 5). However, Plaintiff does not connect Rodriguez to the alleged violations at all, and the only allegation regarding Panduro is that Panduro was involved in some sort of "verbal altercation" that Plaintiff "had absolutely nothing to do with." (*Id.*) Likewise, allegations against Calderon are limited to the facts that 1) Plaintiff brought up his issues to Calderon and 2) Calderon told Plaintiff that "the program was randomized by the computer" and admitted that Plaintiff was frequently last. (*Id.*) Plaintiff's allegations are insufficient to state a claim against these defendants based on violation of Plaintiff's constitutional rights.

With respect to Claim 3, medical care related to Plaintiff's bruised ribs, Plaintiff alleges that defendants Sandy and M. Cantu "did nothing for over 5 weeks." (ECF No. 1 at 7). However, in describing the actions of defendants in support of this claim, Plaintiff uses "she" pronouns without identifying which defendant he is referring to. Plaintiff does make a conclusory statement that "Sandy prevented [Plaintiff's] medical care," but Cantu is not mentioned at all.

Because Plaintiff failed to establish the causal link between certain defendants and the claimed constitutional violations, he cannot proceed against these defendants.

**C.     Municipal and private-entity liability**

Plaintiff names Kings County Jail, Hanford Sheriff Department, and Wellpath Medical as defendants in his complaint. (ECF No. 1 at 1). Plaintiff fails to link Kings County Jail or Hanford Sheriff Department to any claims or allegations; they are not referenced anywhere in his complaint other than in the caption. Plaintiff makes only a cursory reference to Wellpath without explaining what this entity is or how it is connected to the alleged violations of his constitutional rights.

Moreover, to state a claim for municipal liability—or liability of a private entity acting under color of state law—under Section 1983, a plaintiff must allege: (1) that the plaintiff was deprived of a constitutional right; "(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted). There can be no municipal liability without an underlying constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). A *Monell* claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Brown v. Contra Costa Cty.*, No. C 12–1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 90–01 (9th Cir. 2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an

existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823–24.

In his complaint, Plaintiff does not allege facts demonstrating that actions of these three defendants—Kings County Jail, Hanford Sheriff Department, and Wellpath—were the result of an official policy or custom. In fact, his complaint includes almost no allegations against these defendants. Accordingly, Plaintiff failed to state any cognizable claims against Kings County Jail, Hanford Sheriff Department, and Wellpath. *Thompson v. Burach*, 513 F. App'x 691, 692 (9th Cir. 2013).

### D. Conditions of Confinement

Because Plaintiff appears to have been a pretrial detainee at the time of the incident,[2] the Court analyzes the claim under the Fourteenth Amendment. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The elements of a pretrial detainee's Fourteenth Amendment conditions of confinement claim against an individual defendant are:

> 1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> 2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> 3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> 4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

*Castro*, 833 F.3d at 1071 (alteration in original) (footnote, citation, and internal quotation marks omitted); *see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *Watkins v. Tuolumne Cty. Jail*, 2019 WL 2177642, at *5 (E.D. Cal., May 20, 2019). This is a

---

[2] Plaintiff's complaint does not state whether he was a pretrial detainee at the time, but his allegations that the incident happened when he was KCJ suggest that he was.

10

standard that is something "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

    **1. Access to toilet**

    Courts in this and other districts have held that a temporary delay in allowing a prisoner to use a restroom fall short of establishing an Eighth Amendment claim. *See, e.g.*, *von Koenigsberg-Tyrvaldssen v. Kohut*, 2017 WL 1277457, at *9-*10 (D. Mont. Jan. 20, 2017) (isolated incidents of not having immediate access to a bathroom were insufficient to state a federal constitutional claim; providing summary of similar cases); *Samu v. Stewart*, 2011 WL 4074781, at *2 (W.D. Mich. Sept. 13, 2011) (finding isolated and temporary refusal or delay in allowing a prisoner to use the bathroom did not support an Eighth Amendment claim); *see also Hartsfield v. Vidor*, 199 F.3d 305, 309–10 (6th Cir. 1999) (allegations that prisoner was denied use of a toilet for two separate 8–hour periods over two days did not state a claim for violation of the Eighth Amendment); *Gerst v. Arpaio*, 2012 WL 3228838, at *4 (D. Ariz., Aug. 6, 2012) ("As to Plaintiff's claim that he was deprived of air conditioning, water, and the use of a bathroom for three hours, he has alleged a temporary inconvenience, not a "sufficiently serious" deprivation"); *Saenz v. Reeves*, 2012 WL 4049975, at *14 (E.D. Cal., Sept. 13, 2012) ("[D]enying Plaintiff access to a toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment."). While these cases were decided under the Eighth Amendment, they inform the Court's analysis under the Fourteenth Amendment.

    Here, Plaintiff's allegations that he was denied the use of the toilet in his cell because it was overflowing on a single occasion for about five hours (ECF No. 1 at 3) are insufficient to state a claim upon which relief may granted. Plaintiff does not allege that this five-hour delay or the briefly unsanitary conditions resulting from overflowing sewage placed him in substantial risk of suffering serious harm or actually caused him injury. Further, Plaintiff has not adequately alleged that any of the defendants made an intentional decision with respect to the clogged toilet or that a reasonable officer in the circumstances would have appreciated any

11

risk, much less a high degree risk, from a temporary deprivation of toilet access or overflowing toilet. Plaintiff also failed to allege that the measures undertaken by defendants to abate the risk were not reasonable. To the contrary, it appears that both defendants who Plaintiff alleges were involved in this incident attempted to remedy the situation: DT131 by contacting other staff who could assist him and Lopez by providing him with a plunger. (*Id.*)

Plaintiff therefore failed to state a cognizable conditions-of-confinement claim based on the incident involving overflowing toilet (Claim 1).

**2. Phone access and program time.**

In his second conditions of confinement claim (Claim 2), Plaintiff alleges that after an altercation, the jail was placed on lockdown "for over a week," during which his "program time" was limited, and Plaintiff frequently was not able to use the phone or watch TV during that time because it often fell during late night hours. (ECF No. 1 at 5).

First, Plaintiff has not alleged facts showing that curtailing his phone and TV access for about a week during lockdown put him at substantial risk of suffering serious harm, or that any defendant failed to take reasonable measures to abate that risk, or that a reasonable person in the defendants' position would have appreciated a high risk of harm existed under the circumstances. *Castro*, 833 F.3d at 1071. Plaintiff also does not allege he suffered any physical injuries as a result.

Second, as discussed above, Plaintiff failed to link any defendant to this alleged constitutional violation. Plaintiff does not mention Rodriguez at all; identifies Panduro as the person involved in the altercation that precipitated the lockdown; and alleges that Calderon answered his inquiry regarding the timing of cell releases ("the program was randomized by the computer"). (ECF No. 1 at 5).

Finally, when balancing the obligation to provide for inmate and staff safety against the duty to accord inmates the rights and privileges to which they are entitled, prison officials are afforded "wide-ranging deference." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). When a "lockdown was in response to a genuine emergency," and "restrictions were eased as the prison administration determined that the emergency permitted," the Court may not lightly second-

guess officials' expert judgments about when programs could safely be restored. *Norwood v. Vance*, 591 F.3d 1062, 1069–70 (9th Cir. 2010) (quoting *Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980)). "These decisions are delicate ones, and those charged with them must be given reasonable leeway." *Hayward*, 629 F.2d at 603. Here, Plaintiff alleges that the lockdown was of a short duration (about a week) and in response to "a physical altercation, which turned into a verbal altercation" that involved safety of inmates and staff. Under these circumstances, prison officials are entitled to leeway in restricting services.

In sum, Plaintiff's allegations are insufficient to support a claim regarding conditions of confinement.

**E.     Inadequate Medical Care.**

"[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case. The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (alteration in original) (footnote, citations, and internal quotation marks omitted).

Plaintiff appears to bring two claims (Claims 3 and 4) for inadequate medical care for bruised ribs against a private entity, two medical professionals, and a deputy. (ECF No. 1 at 7–10).

### 1. *Monell* Claim for Inadequate Medical Care

As stated above, *Monell* applies to § 1983 claims against private entities acting under color of state law like Wellpath. *Tsao*, 698 F.3d at 1139. To state a *Monell* claim against Wellpath, Plaintiff must allege: (1) that Plaintiff was deprived of a constitutional right; (2) that Wellpath had a policy; (3) that this policy amounts to deliberate indifference to Plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Plumeau*, 130 F.3d at 438.

Plaintiff's claim against Wellpath is not based on any policy or established custom. Moreover, his allegations involve an isolated incident. A *Monell* claim requires more. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents."). An "isolated instance . . . is insufficient evidence of a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the County." *Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (internal citations omitted). Therefore, Plaintiff failed to adequately allege a *Monell* claim against Wellpath based on deliberate indifference to serious medical needs.

### 2. Inadequate Medical Care as to Individual Defendants

With respect to individual defendants named in Claim 3, Sandy and Cantu, Plaintiff states they "did nothing for over 5 weeks." (ECF No. 1 at 7). As discussed above, by using a generic "she" pronouns without identifying to which defendant he is referring, Plaintiff failed to adequately link defendants Sandy and Cantu to the alleged constitutional violation. In fact, Cantu is not mentioned at all.

Moreover, Plaintiff failed to satisfy all four prongs of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment. As to the first prong, Plaintiff does not allege that any defendant made an intentional decision not to provide care. To the contrary, it appears that Plaintiff saw multiple providers multiple times and received X-rays, pain relief medication, and subsequently, a different type of pain relief medication. (ECF No. 1 at 7). As to the second prong, Plaintiff also failed to allege that the treatment he received (or did not receive) put him at substantial risk of

suffering serious harm. As to the third prong, Plaintiff does not identify what "reasonable available measure" defendants failed to undertake that would have abated substantial risk of Plaintiff suffering serious harm. Plaintiff also fails to allege that his injury could have been alleviated had some other treatment been administered swiftly. It appears that after several weeks, he was told that his ribs may be bruised, but did not receive any additional treatment. Moreover, a mere delay in receiving medical treatment, without more, does not constitute "deliberate indifference," unless the plaintiff can show that the delay caused serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *see also Hertig v. Cambra*, No. 1:04-CV-5633-ROS, 2009 WL 62126, at *4 (E.D. Cal. Jan. 8, 2009) ("[A] delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him."); *Cravotta v. Cnty. of Sacramento*, No. 2:22-CV-00167-DJC-AC, 2024 WL 645705, at *7 (E.D. Cal. Feb. 15, 2024) (same).

Similarly, Plaintiff failed to satisfy all four prongs of the inadequate medical care standard, *Gordon*, 888 F.3d at 1125, in alleging Claim 4 against Deputy Sheriff Blanco. (ECF No. 1 at 9). It appears that Blanco may have delayed Plaintiff obtaining medication by about 12 hours, from 8 am to 8 or 9 pm. (*Id.* at 9–10). Plaintiff has not alleged that he suffered further injury due to this delay. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (a delay in medical treatment must lead to further injury to support a claim for deliberate indifference).

Plaintiff thus fails to state a claim for violations of the right to adequate medical care under the Fourteenth Amendment due process clause against any defendant.

### F. First Amendment

Plaintiff also fails to state a claim for violation of his First Amendment right against Blanco based on "stripping of [his] liberal rights of freedom of speech" when Blanco cut short conversation between Plaintiff and medical staff after Plaintiff refused to provide his name as requested. (ECF No. 1 at 9–10). Plaintiff's First Amendment right, like other prisoners' constitutional rights, is subject to "substantial limitations and restrictions in order to allow

15

prison officials to achieve legitimate correctional goals and maintain institutional security." *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted); *see also Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners.") A temporary delay or an isolated incident of delay without evidence of improper motive does not violate a prisoner's First Amendment rights. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); *Drake v. bal*, No. 1:22-CV-01149 JLT BAM PC, 2024 WL 689505, at *6 (E.D. Cal. Feb. 20, 2024), *report and recommendation adopted sub nom.*, 2024 WL 1258523 (E.D. Cal. Mar. 25, 2024).

A jail has legitimate penological interest in delivering medical care efficiently and accurately, and providing that care to the correct person. *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.") At most, Plaintiff has alleged a temporary delay in being able to further communicate with medical staff or an isolated incident. Neither violates his First Amendment right.

**V.   CONCLUSION AND ORDER**

The Court finds that Plaintiff's complaint fails to state any cognizable claims. The Court previously provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file an amended complaint, but Plaintiff chose to stand on his complaint.

Based on the foregoing, it is **ORDERED** that:

1. The Clerk of the Court is directed to randomly assign a district judge to this action.

And it is further **RECOMMENDED** that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 31, 2024**          /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE