UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN JOEL HOPSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KINGS COUNTY JAIL, *et al.*,<br><br>　　　　　Defendants. | 1:23-cv-01555-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THIS ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 20)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Ryan Joel Hopson is confined in Kings County Jail (KCJ) and proceeds *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff alleged several issues at Kings County Jail that he believes violated his constitutional rights.

For the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim. Plaintiff has thirty days from the date of service of these findings and recommendations to file his objections.

**I.      PROCEDURAL BACKGROUND**

Plaintiff filed the complaint commencing this action on November 3, 2023. (ECF No. 1). On May 7, 2024, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 10). The Court provided Plaintiff with applicable legal standards, explained why the complaint failed to state any cognizable claims, and gave Plaintiff

1

1  thirty days to either file a first amended complaint or notify the Court in writing that he wanted
2  to stand on his complaint. (*Id.* at 2, 19).

3  After receiving the Court's screening order, Plaintiff filed a notice on June 12, 2024 that
4  he wanted to stand on his complaint. (ECF No. 12). The Court then issued Findings and
5  Recommendations, recommending that the case be dismissed for failure to state a claim. (ECF
6  No. 14). Plaintiff filed timely objections to the Findings and recommendations, "asking for
7  more time and the proper paper work to amend [his] claim." (ECF No. 15). As a result, the
8  Court granted Plaintiff another leave to amend his complaint. (ECF No. 17).

9  Plaintiff then filed his First Amended Complaint on November 18, 2024 (ECF No. 20),
10 which is now before the Court for screening.

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## III.  SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint (ECF No. 20) alleges violations of Eighth Amendment prohibition on use of excessive force, Fourteenth Amendment due process, negligence, denial of basic necessities, threat to safety, and conditions of confinement arising from May 10, 2023[1] incident with an overflowing toilet in Plaintiff's cell that occurred while

---

[1] While Plaintiff's FAC states that the incident occurred on May 10, 2024 (ECF No. 20 at 3, 4, 7), Plaintiff's original complaint alleges the incident with identical facts and defendants occurred on

Plaintiff was held in custody at Kings County Jail. (ECF No. 20). Plaintiff names as defendants Kings County; A. Lopez, floor officer at Kings County Sherriff's Department, and DT131, control and radio operator/officer at Kings County Sheriff's Department. (ECF No. 20 at 2). While Plaintiff alleges three claims—one against each of the defendants—all three claims stem from the same incident and share the same facts.

In Claim 1, Plaintiff alleges that Kings County is responsible for actions of A. Lopez and DT131 based on the theory of vicarious liability. (*Id.* at 3). Kings County employs the other two defendants, and employers are responsible for their employees.  Kings County is responsible for policy and procedure setting and Kings County is responsible for ensuring all of its employees and agencies follow and abide federal and state laws, including civil rights, humanitarian rights, and others.

Plaintiff then alleges Claim 2 against A. Lopez and Claim 3 against DT131. He states that on May 10, 2023, at 8:00 am, while Plaintiff was housed at Kings County jail, his cell toilet clogged and overflowed, depositing feces on the floor of his cell. (*Id.* at 4, 7). Plaintiff pressed his in-cell-intercom button, a woman answered, but deferred all responsibility to deputy A. Lopez. Plaintiff asked the radio operator if she would bring him a plunger or assist Plaintiff in getting him a plunger. The operator instructed him to "ask the sheriff's deputies" and told Plaintiff that plunger was not her job. Then she stopped responding. The operator, identified as DT131, refused to notify any staff and refused to assist Plaintiff. (*Id.* at 4, 7–8).

At around 10:57 am, Plaintiff finally got the attention of A. Lopez, the floor officer and spoke to him. Lopez was outside Plaintiff's cell, which was flooded. The water was flowing freely out of the cell and into the housing unit. Plaintiff explained the situation to him, described his interactions with the operator, and asked Lopez to look into his cell, which he was reluctant to do. Lopez told him he would get him the plunger. (*Id.* at 5).

At 11:09 am, Plaintiff spoke with Lopez again and Lopez said he was working on getting the plunger. (*Id.* at 5).

---

May 10, 2023 (ECF No. 1 at 3). Because Plaintiff filed his complaint on November 3, 2023, the May 10, 2023, date appears to be the correct one.

At 11:15 am, staff brought the plunger to the housing unit, but not to Plaintiff's cell. At that point, Plaintiff was forced to clean the fecal matter with his bare hands because he had no supplies or biohazard gear with which to clean. He had to use the toilet constantly throughout this entire ordeal; he had to urinate in sink repeatedly like an animal. Plaintiff puked and vomited repeatedly.

At 11:56 am, Plaintiff spoke with Lopez again and told him Plaintiff still did not have the plunger. Lopez said "she never let you out to get the plunger," "she" being the operator. Lopez was clearly aware she did not allow Plaintiff to get the plunger because he saw it at the pod door when he entered it. Lopez sounded condescending and clearly amused by Plaintiff's suffering. He repeatedly showed deliberate indifference to Plaintiff's suffering and substantial risk to Plaintiff's health. (*Id.* at 6). Lopez had the authority to get the plunger and ensure it was given to Plaintiff. Lopez failed to allow Plaintiff to use any of the cleaning supplies.

For five hours, Plaintiff, despite being respectful and calm, was forced to wade in his and other people's fecal matter and urine. The amount of fecal matter was far greater than that came out of one person, so other inmates' feces were present.

For his injuries, Plaintiff states he was emotionally distraught and suffered excessive emotional torment. (*Id.* at 3, 4, 7). He was treated and felt as less than human. Plaintiff was physically in pain from holding his bladder for hours and in fear of infection, because he had to clean feces with his hands without gloves.

In his request for relief, Plaintiff asks for money damages in the sum of $1,600,000, a statement from Kings County admitting wrongdoing, an apology, a public press release, and staff training. (ECF No. 20 at 10).

## IV. LEGAL STANDARDS

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978).

**B.      Supervisory Liability**

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

**C.      Physical Injury**

For prisoners' actions, mental or emotional injuries alone do not create a federal cause of action; there must also be "a prior showing of physical injury or the commission of a sexual act . . ." 42 U.S.C. § 1997e(e); *see also Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1275 n. 12 (E.D. Cal. 2009) ("[T]he Prison Litigation Reform Act forbids prisoners from filing actions for mental or emotional injury while in custody without a prior showing of physical injury. Thus, Plaintiff's claim for mental anguish, emotional distress and humiliation must fail as a matter of law."); *Spears v. El Dorado Cty. Sheriff's Dep't*, No. 2:15-CV-0165 MCE-AC, 2019 WL 1043105, at *5 (E.D. Cal. Mar. 5, 2019), report and recommendation adopted, 2019 WL 2491314 (E.D. Cal. June 14, 2019) ("Damages are not available to prisoners asserting only

mental or emotional injuries. '[F]or all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than de minimis.'" (quoting *Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002)) (brackets in original)).

## V. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Municipal liability

Plaintiff names Kings County as one of the defendants in his complaint. (ECF No. 1 at 3). To state a claim for municipal liability—or liability of a private entity acting under color of state law—under Section 1983, a plaintiff must allege: (1) that the plaintiff was deprived of a constitutional right; "(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted). There can be no municipal liability without an underlying constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). A *Monell* claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Brown v. Contra Costa Cty.*, No. C 12–1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 90–01 (9th Cir. 2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823–24.

7

In his complaint, Plaintiff does not allege facts demonstrating that the actions of any of the defendants were the result of an official policy or custom. Plaintiff alleges that Kings County is liable under the theory of vicarious liability as an employer of the two other defendants. (ECF No. 20 at 3). While Plaintiff makes a general allegation that "Kings County is responsible for policies and procedure setting and Kings County is responsible for ensuring all of its employees and agencies follow and abide by the law," he does not identify any custom or policy that is the driving force behind the alleged violations of his civil rights. (*Id.*) To the contrary, Plaintiff argues that Kings County is liable because its employees did *not* follow its policies and procedures. (*Id.*) Moreover, Plaintiff alleges only a single, isolated incident, which is not sufficient to impose liability under *Monell*. Plaintiff does not allege that the incident was caused by an existing, unconstitutional policy that can be attributed to Kings County. *Tuttle*, 471 U.S. at 823–24.

In its first screening order, the Court provided plaintiff with the legal standard for municipal liability set forth above, and explained to Plaintiff that he did not state a cognizable claim for municipal liability because he did not "allege facts demonstrating that actions of these three defendants—Kings County Jail, Hanford Sheriff Department, and Wellpath—were the result of an official policy or custom." (ECF No. 14 at 9–10). Despite filing an amended complaint, Plaintiff has failed to allege facts that would establish municipal liability. Therefore, the Court will recommend that Plaintiff's Claim 1 against Kings County be dismissed.

**B.     Conditions of Confinement**

Because Plaintiff appears to have been a pretrial detainee at the time of the incident,[2] the Court analyzes the claim under the Fourteenth Amendment. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The elements of a pretrial detainee's Fourteenth Amendment conditions of confinement claim against an individual defendant are:

> 1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

---

[2] Plaintiff's complaint does not state whether he was a pretrial detainee at the time, but his allegations that the incident happened when he was KCJ suggest that he was.

8

> 2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> 3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> 4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

*Castro*, 833 F.3d at 1071 (alteration in original) (footnote, citation, and internal quotation marks omitted); *see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *Watkins v. Tuolumne Cty. Jail*, 2019 WL 2177642, at *5 (E.D. Cal., May 20, 2019). This is a standard that is something "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Plaintiff's allegations do not state a constitutional claim under these standards because Plaintiff has not alleged that any of the defendants made an *intentional* decision with respect to the clogged toilet.  To the contrary, it appears that both defendants who Plaintiff alleges were involved in this incident attempted to remedy the situation: DT131 by instructing him to contact floor deputies who could assist him and Lopez by providing him with a plunger. (*Id.*)

Plaintiff's allegations also fail to state a constitutional claim because the conditions he describes were not so serious as to put plaintiff at substantial risk of suffering serious harm. Courts in this and other districts have held that a temporary delay in allowing a prisoner to use a restroom fall short of establishing an Eighth Amendment claim. *See, e.g.*, *von Koenigsberg-Tyrvaldssen v. Kohut*, 2017 WL 1277457, at *9–*10 (D. Mont. Jan. 20, 2017) (isolated incidents of not having immediate access to a bathroom were insufficient to state a federal constitutional claim; providing summary of similar cases); *Samu v. Stewart*, 2011 WL 4074781, at *2 (W.D. Mich. Sept. 13, 2011) (finding isolated and temporary refusal or delay in allowing a prisoner to use the bathroom did not support an Eighth Amendment claim); *see also Hartsfield v. Vidor*, 199 F.3d 305, 309–10 (6th Cir. 1999) (allegations that prisoner was denied

9

use of a toilet for two separate 8–hour periods over two days did not state a claim for violation of the Eighth Amendment); *Gerst v. Arpaio*, 2012 WL 3228838, at *4 (D. Ariz., Aug. 6, 2012) ("As to Plaintiff's claim that he was deprived of air conditioning, water, and the use of a bathroom for three hours, he has alleged a temporary inconvenience, not a "sufficiently serious" deprivation"); *Saenz v. Reeves*, 2012 WL 4049975, at *14 (E.D. Cal., Sept. 13, 2012) ("[D]enying Plaintiff access to a toilet and water for five and one half hours on one occasion and four and one half hours on a separate occasion, while he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment.").[3]

Here, Plaintiff's allegations that he was denied the use of the toilet in his cell because it was overflowing on a single occasion for about five hours are insufficient to state a claim upon which relief may granted. Plaintiff does not allege that this five-hour delay or the briefly unsanitary conditions resulting from overflowing sewage placed him in substantial risk of suffering serious harm or caused him physical injury beyond emotional distress. *Oliver*, 289 F.3d at 628.

In its previous screening order, the Court provided Plaintiff the relevant legal standard and explained to him that "Plaintiff's allegations that he was denied the use of the toilet in his cell because it was overflowing on a single occasion for about five hours (ECF No. 1 at 3) are insufficient to state a claim upon which relief may granted." (ECF No. 14 at 11). In his First Amended Complaint, Plaintiff largely repeats the same allegations, which are still insufficient to state a cognizable conditions-of-confinement claim based on the incident involving overflowing toilet.

## VI.    CONCLUSION AND ORDER

The Court recommends that this action be dismissed, without granting Plaintiff further leave to amend. In the Court's prior screening order (ECF No. 14), the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and

---

[3] While these cases were decided under the Eighth Amendment, they inform the Court's analysis under the Fourteenth Amendment.

provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified by the Court. Thus, it appears that further leave to amend would be futile.

Based on the foregoing, it is **RECOMMENDED** that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than 15 pages including exhibits.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 20, 2025**                  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

11